UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

LEWIS FAIRLEY,

          Plaintiff,                    Case No. 1:22-cv-1230

v.                                            Honorable Ray Kent

JOHN DAVIDS et al.,

          Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed *in forma pauperis*. (ECF No. 4.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 1, PageID.8.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding

tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

2

consent from the defendants[; h]owever, because they had not been served, they were not parties to th[e] action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss, for failure to state a claim, the following claims: (1) Plaintiff's Eighth Amendment claims premised upon placement in segregation; (2) Plaintiff's Eighth Amendment claim against Defendant Gardner premised upon his verbal harassment and threat of harm; and (3) Plaintiff's Fourteenth Amendment procedural and substantive due process claims. Plaintiff's First Amendment retaliation claims against all Defendants remain in the case.

## Discussion

### I.  Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Warden John Davids, Prison Counselor

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

Unknown Pietrzyk, Sergeant Unknown Cooks, and Corrections Officers Unknown Gardner and Unknown Butler.

Plaintiff alleges that in July 2022, Plaintiff filed a racial discrimination complaint against Defendant Pietrzyk. (ECF No. 1, PageID.3.) According to Plaintiff, he was told that he could not move to the next level of a program, "allegedly because of [his] history." (ECF No. 1-1, PageID.16.) Plaintiff claimed, however, that he was "aware of white prisoners with a similar history who have gotten to move to the next level." (*Id.*) Plaintiff contends that at the time he submitted the complaint, he was "20 months misconduct free." (ECF No. 1, PageID.3.)

On August 1, 2022, Defendant Pietrzyk verbally threatened that Plaintiff would "pay for it" if Plaintiff did not sign off on his complaint. (*Id.*) Then, on August 29, 2022, Defendant Gardner stopped at Plaintiff's cell and threatened him with physical harm if Plaintiff did not stop writing grievances about staff and did not drop his racial discrimination complaint. (*Id.*) Plaintiff told Defendant Gardner that he would be filing a grievance against him. (*Id.*) Defendant Gardner responded that Plaintiff would "see what happen[s] to monkeys that like to file grievances." (*Id.*) That same day, Plaintiff told Defendant Pietrzyk about Defendant Gardner's harassment. (*Id.*) Defendant Pietrzyk asked Plaintiff if he was willing to drop his racial discrimination complaint; Plaintiff responded that he was not. (*Id.*) Defendant Pietrzyk responded, "We [here] at I-Max stick together and when you f*** with one of us you f*** with all of us." (*Id.*)

Shortly thereafter, Defendants Pietrzyk, Gardner, Cooks, and two other corrections officers (not named parties) came to Plaintiff's cell and told him to cuff up. (*Id.*) Plaintiff asked why, but was told that if he did not immediately comply, he would be gassed. (*Id.*) Plaintiff was cuffed and taken to segregation. (*Id.*) Two days later, he received three Class II misconducts—two for insolence, and one for disobeying a direct order. (*Id.*) Plaintiff contends that Defendant Gardner

4

issued the two misconducts for insolence in retaliation for Plaintiff's grievances and statement of intent to file a grievance. (*Id.*, PageID.4.) Plaintiff also contends that all three misconducts did not require confinement in segregation. (*Id.*)

On October 10, 2022, Defendant Davids was conducting rounds in the segregation unit. (*Id.*) Plaintiff stopped him and addressed the issue of being placed in segregation. (*Id.*) Defendant Davids responded that he knew about Plaintiff's situation, but that he "[stood] by his staff and that [Plaintiff] should stop writing grievances on his staff." (*Id.*) Plaintiff contends that Defendant Davids violated his rights by failing to correct the problem. (*Id.*, PageID.5.)

Plaintiff states that he was still in segregation as of December 1, 2022. (*Id.*, PageID.4.) On December 5, 2022, Defendant Butler issued an allegedly false misconduct to Plaintiff for threatening behavior. (*Id.*, PageID.6.) According to Plaintiff, Defendant Butler stated that she escorted Plaintiff to the shower, but Plaintiff contends that she never did so. (*Id.*) Plaintiff contends that Defendant Butler falsified the misconduct to retaliate against Plaintiff for filing grievances against her coworkers. (*Id.*) Defendant Butler told Plaintiff that if he kept filing grievances "thing[s] will only get wors[e] for" him. (*Id.*)

Based on the foregoing, the Court construes Plaintiff's complaint to assert: (1) First Amendment retaliation claims against all Defendants; (2) an Eighth Amendment claim premised upon his placement in segregation against all Defendants; (3) an Eighth Amendment claim against Defendant Gardner premised upon his verbal harassment and threat of harm; and (4) Fourteenth Amendment due process claims against all Defendants. Plaintiff seeks compensatory and punitive damages, as well as "any other [relief]" that the Court deems appropriate. (*Id.*, PageID.8.)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. First Amendment Retaliation Claims

The Court has construed Plaintiff's complaint to assert First Amendment retaliation claims premised upon the issuance of allegedly false misconducts, his placement and continued confinement in segregation, and Defendant Gardner's threat of physical harm in response to the grievances that Plaintiff filed, as well as Plaintiff's statement of intent to file a grievance against Defendant Gardner.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff has adequately pled that he engaged in protected conduct, and his placement and continued confinement in segregation, the issuance of allegedly false misconducts, and Defendant Gardner's threat of physical harm satisfy the adverse action requirement. Moreover, throughout his complaint, Plaintiff contends that Defendants made statements suggesting that they took these actions because of Plaintiff's grievances against staff. Furthermore, Plaintiff plausibly suggests that Defendant Davids was personally involved because Plaintiff avers that he spoke to Defendant Davids about his placement in segregation and Defendant Davids responded that he "[stood] by his staff and that [Plaintiff] should stop writing grievances on his staff." (ECF No. 1, PageID.4.) Plaintiff, therefore, has adequately alleged First Amendment retaliation claims against Defendants.

7

### B. Eighth Amendment Claims

#### 1. Placement in Segregation

The Court has construed Plaintiff's complaint to assert an Eighth Amendment claim premised upon his confinement in segregation. The Eighth Amendment prohibits punishments that are not only physically barbaric, but also those which are incompatible with "the evolving standards of decency that mark the progress of a maturing society," or which "involve the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102–03 (1976) (internal quotations omitted). To establish an Eighth Amendment claim, the prisoner must show that he was deprived of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Conditions that are restrictive or even harsh, but are not cruel and unusual under contemporary standards, are not unconstitutional. *Id.* Thus, federal courts may not intervene to remedy conditions that are merely unpleasant or undesirable.

Placement in segregation is a routine discomfort that is "part of the penalty that criminal offenders pay for their offenses against society." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). Even though Plaintiff may have been denied certain privileges as a result of his placement in segregation, his complaint is devoid of allegations suggesting that he was denied basic human needs and requirements. The Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges as a result of administrative segregation cannot establish an Eighth Amendment violation. *See Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008). Moreover, Plaintiff cannot bring an Eighth Amendment claim for emotional or mental damages because he does not allege a physical injury. *See* 42 U. S.C. §1997e(e); *see also Hudson*, 503 U.S. at 5; *Harden-Bey*, 524 F.3d at 795. As a result, Plaintiff fails to state an Eighth Amendment claim against Defendants premised upon his placement in segregation.

### 2. Verbal Harassment and Threat of Harm

The Court has also construed Plaintiff's complaint to assert an Eighth Amendment claim against Defendant Gardner premised upon verbal harassment (calling Plaintiff a "monkey") and his threat to have Plaintiff harmed. While unprofessional, allegations of verbal harassment or threats by prison officials toward an inmate do not constitute punishment within the meaning of the Eighth Amendment. *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) (per curiam). Nor do allegations of verbal harassment rise to the level of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Id.* The Court, therefore, will dismiss any Eighth Amendment claim against Defendant Gardner premised upon verbal harassment and his threat to have Plaintiff harmed.

### C. Fourteenth Amendment Due Process Claims

### 1. Procedural Due Process

The Court has liberally construed Plaintiff's complaint to assert Fourteenth Amendment procedural due process claims premised upon his receipt of four misconducts—two for insolence, one for disobeying a direct order, and one for threatening behavior. Plaintiff contends that these misconducts are false. A prisoner's ability to challenge a prison misconduct conviction depends on whether the conviction implicated any liberty interest. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995).

Pursuant to MDOC Policy Directive 03.03.105, a Class I misconduct is a "major" misconduct" and Class II and III misconducts are "minor" misconducts. *See* MDOC Policy Directive 03.03.105 ¶ C (eff. Apr. 18, 2022). Threatening behavior is a Class I misconduct, and

9

insolence and disobeying a direct order are Class II misconducts. *See id.* Attach. A & B. Plaintiff's minor misconducts for insolence and disobeying a direct order do not implicate the Due Process Clause. The Sixth Circuit routinely has held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g., Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004), *overruled on other grounds by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003). Plaintiff, therefore, cannot maintain due process claims premised upon his receipt of allegedly false Class II misconducts for insolence and disobeying a direct order.

With respect to the Class I threatening behavior misconduct, Plaintiff's complaint and exhibits are wholly devoid of facts concerning whether he was convicted of that misconduct. In any event, Plaintiff does not allege that this misconduct had any effect on the duration of his sentence—and he cannot. Plaintiff is serving numerous sentences imposed in 2003, 2006, and 2021 for crimes committed in 1999, 2005, and 2021. *See* Offender Tracking Information System (OTIS), https://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=297836 (last visited Jan. 10, 2023). The Sixth Circuit has examined Michigan statutory law, as it relates to the creation and forfeiture of disciplinary credits for prisoners convicted for crimes occurring after April 1, 1987. In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court determined that loss of disciplinary credits does not necessarily affect the duration of a prisoner's sentence. Rather, it merely affects parole eligibility, which remains discretionary with the parole board. *See id.* at 440. Building on this ruling, in *Nali v. Ekman*, 355 F. App'x 909 (6th Cir. 2009), the court held that a misconduct citation in the Michigan prison system does not affect a prisoner's constitutionally protected liberty interests, because it does not necessarily affect the length of confinement. *Id.* at 912; *accord Wilson v. Rapelje*, No. 09-13030, 2010 WL 5491196, at *4 (E.D. Mich. Nov. 24, 2010) (holding that

10

"plaintiff's disciplinary hearing and major misconduct sanction does not implicate the Fourteenth Amendment Due Process Clause"), *Report and Recommendation adopted*, 2011 WL 5491196 (W.D. Mich. Jan. 4, 2011). In the absence of a demonstrated liberty interest, Plaintiff has no due process claim based on any loss of disciplinary credits. *See Bell v. Anderson*, 301 F. App'x 459, 461–62 (6th Cir. 2008).

Plaintiff suggests that he was placed in segregation on or about August 29, 2022, and that he was still in segregation as of December 1, 2022. Confinement in administrative segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden-Bey v. Rutter*, 524 F.3d 789, 794 (6th Cir. 2008).

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484. Similarly, the Sixth Circuit has held that placement in administrative segregation for two months does not require the protections of due process. *See Joseph*, 410 F. App'x at 868 (61 days in segregation is not atypical and significant). It has also held, in specific circumstances, that confinement in segregation for a much longer period does not implicate a liberty interest. *See, e.g., Jones v. Baker*, 155 F.3d 810, 812–13 (6th Cir. 1998) (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding). Generally, only

11

periods of segregation lasting for several years or more have been found to be atypical and significant. *See, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest); *Harden-Bey*, 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, i.e., three years without an explanation from prison officials, implicates a liberty interest).

While Plaintiff may have been housed in segregation during disciplinary proceedings, his complaint is devoid of allegations suggesting that he was found guilty of either of the misconducts and sanctioned to segregation as a result. Plaintiff, therefore, fails to allege any facts showing that he was subjected to conditions which would implicate a liberty interest because of the allegedly false misconduct tickets. His Fourteenth Amendment procedural due process claims against Defendants will, therefore, be dismissed.

### 2. Substantive Due Process

To the extent Plaintiff has raised substantive due process claims regarding the allegedly false misconducts, he fails to state such a claim.

"Substantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)). With respect to an allegedly falsified misconduct report, the Sixth Circuit has held that framing an inmate by planting evidence may violate substantive due process where a defendant's conduct shocks the conscience and constitutes an "egregious abuse of governmental power." *Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988), *overruled in other part*

by *Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999). Plaintiff's complaint, however, is devoid of any allegations from which the Court could infer that any of the named Defendants acted to frame Plaintiff.

Moreover, "[w]here a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273–75 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens). If such an amendment exists, the substantive due process claim is properly dismissed. *See Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013). In this case, the First and Eight Amendments, as well as the Fourteenth Amendment's protections regarding procedural due process, apply to Plaintiff's claims for relief. Consequently, any intended substantive due process claim will be dismissed.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that the following claims against Defendants will be dismissed: (1) Plaintiff's Eighth Amendment claims premised upon placement in segregation; (2) Plaintiff's Eighth Amendment claim against Defendant Gardner premised upon his verbal harassment and threat of harm; and (3) Plaintiff's Fourteenth Amendment procedural and substantive due process claims. Plaintiff's First Amendment retaliation claims against all Defendants remain in the case.

An order consistent with this opinion will be entered.


Dated:  February 9, 2023                    /s/ Ray Kent
                                            Ray Kent
                                            United States Magistrate Judge